Good morning, Your Honor. Good morning. Dennis Wolinchak for the Appellants. And basically, may I begin, Your Honor? Pardon? May I begin? Of course. Thank you. Basically, Your Honors, the reason we're here today is really very simple. I'd like to focus my time, the limited time I have, really, on one issue and then reserve time for rebuttal. But that issue has to do with this claim under 766A, the tortious interference claim. And basically, the reason we're here is because we believe that the Court misapplied the elements of Section 766A in the following simple manner. Basically, what the Court created, in our opinion, is sort of a hybrid tort between 766, which deals with breaches of the relationship, which were clearly not found on the record here by the Court, and deals with interference and acts directed toward third parties to the contractual relationship. In this case, it would be the customer agreements that Verizon claims to have. Now, again, we don't know what the actual obligations that Verizon does have, because there's nothing in the record relating to any contract between any customer and Verizon. So we're not clear on what it is we, our clients supposedly burdened in terms of that contractual obligation, because there's nothing in the record to support any contractual obligation or any contract, nor was there any testimony by any customer. But getting back to my simple point, what we have here is the Court not being able to find from the record any breach given the acts which are allegedly these MMA violations that were directed at the customers, which are mutual customers of us and Verizon. And so what the Court basically did, and the reason why we're here today, is because the Court then sort of created, as I said, this sort of hybrid tort by essentially engrafting on to 766's elements a burdening issue, a burdening element, which is only found in 766A because that particular tort as described in 766A, which is what the Court did rely upon, 766A and not 766, that particular tort requires acts that are directed at the plaintiff, who has the performance with a third party, not acts directed at the third party, but acts directed at the plaintiff-injured party. Well, the plaintiff. Okay. So in your construct, who are you saying is the plaintiff for that purpose? That would be Verizon, Your Honor.  So Verizon has agreements with its customers to provide services. Correct. And as I understand it, your client is, if we accept it, is engaging in improper conduct vis-a-vis customers of Verizon. And Verizon has protocols to protect its customers, does it not? No, that's the point. I don't know what it has because there's nothing anywhere on the record about that. Well, there are industry standards, and your client developed some kind of software to evade the monitoring. Right. But those, again, Your Honor, that's the whole point, are acts under 766A that are directed toward Verizon. For purposes of today's argument, I'm not even going to argue with the time I have whether we actually committed these violations or not, but let's assume we did. Yeah. Those are the acts, and that's where the Court messed up, in my opinion. Those are acts that are directed at Verizon, clearly, but Verizon then has to show more than that those acts are directed at it. It has to show under 766A that there's some kind of causal relationship or causal link between those acts directed at it, which are not the MMA violations. Those are directed at the third parties, and Verizon never argued to the contrary. The acts, the bad acts that you're referring to, Your Honor, are third-party acts under 766, and there is no breach that they could show on page 350, if you look at it in the transcript, because of it. So to answer your question, the acts directed at Verizon, which are not the MMA violations, they are acts that the Court goes on in detail to talk about, for example, sneaking onto its network, all that kind of stuff. Those particular acts, all of those acts, other than the MMA violations, which are acts that are solely directed at the third parties. Counsel, let me follow, because I read that in your brief, and I still don't fully understand it. Okay. Sorry. Let me back up one step as far as my understanding. Based on, if I accept as true, based on this record, that your client took steps to hide its affiliation with Cylon, if I have that name right, and, and, and. Back in 09, you mean? Yes. Previously had been. Yeah. Had issues with that. Had submitted false landing pages for Verizon's approval, and used cloaking software. Right. All acts, Your Honor, if I may interrupt, directed at Verizon.  Those are all directed at Verizon. But those, if I may, do not wind up causing any burden on any contractual obligation under 766. But why not? Why not? Verizon then has a handful of problems, a handful of customers. I mean, not a handful, a boatload of customers who are saying, hey, what's going on here? Not based on those acts, Your Honor. That's the key. Well, wait, but, but as I understood it, I guess I'm not understanding the argument either.  As I understood it, Verizon had safeguards to protect its customers from fraudulent practices. Which may be voluntarily incurred. And the, your client here, the defendants below, were engaged in these fraudulent practices and used these various devices that Judge Seabright described to prevent or to try and baffle Verizon for finding that out. Why, why doesn't that directly burden Verizon's relationship with its customers? I'm not understanding. Because, Your Honor, let me answer that directly. First of all, the use of the term relationship is a misnomer and a wrongful use. And the court fell into that trap because Verizon led them into that trap. There's nothing in 766A that deals with relationships. What it talks about is burden on contractual performance or obligations. That's the key to this. You cannot find in any of the acts that you just described, you see, nor can it even be justified. Nor do they try. Are you saying that whatever contractual agreements Verizon had with its customers didn't include protecting the customers from fraudulent practices by these? Absolutely, I'm saying that. Factor theory? Absolutely, you've got it. And the record is clear on it that there's no evidence to the contrary. There's no contractual obligation ever even produced. And the court comments on it in the record, by the way, again, in this 349 to 351 area of the transcript, which I think is very critical for you to read if you focus on anything, because the court's talking about these very points. And it can't connect up any act in the past that Verizon wants to muddy this up with as to it burdening directly any relationship with its clients in terms of performance of an obligation. It's not just a relationship. That may be a business disparagement claim. It is not a tortious interference of the contract claim under 766A. And I will tell you that nothing in their papers, in their seven pages that they devote to this, ever addressed it. They never addressed it below. They never tried to address it below. And they never argued that the third-party acts, which the court does say is what burdens their relationship, again, those third-party acts have to be related to 766 and have to cause a breach. It's as simple as I can say it. And that's the case law. And the reason for that, if you want to know real quickly, is simply because courts have held in the past, I think the Pettit case that we cite talks about the fact that the reason for that, the policy reason behind that, Your Honor, is because it would be very difficult under 766 in terms of these interferences with third parties, including these MMA violations specifically, directed at those third parties to mislead them, which is what causes the burden on Verizon to refund and all the things it said. It would be almost impossible from a causal standpoint, the Court said, to prove that. And that's why you have a separate tort, which was ignored by the Court below, a separate tort of 766A that he found existed, he found he applies. He applied completely wrongfully and refused to apply it properly, because the only acts that were described have absolutely nothing to do with what Verizon argued is what burdened its alleged contractual obligations with its clients, i.e., the false pages, the fraud on the customers, which are our customers, so it's absurd. But anyway, I'm assuming that for purposes of my time. And those activities, which are completely separate for getting on their network and all that stuff, which has nothing to do with their obligation under any contract that was shown. And that's the key to the whole thing, and that's what we're saying was completely misapplied, requires a reversal and a remand for the Court to apply properly. But frankly, the Court can't. And that's why we sought injunctive relief, because there are no acts that could possibly conceivably lead to a burdening of any obligation under any contractual performance that Verizon has shown in the record exists with its customers, because they never even supplied a contract with their customers to begin with. So all this is based upon just kind of generic, you know, you're bad guys, and therefore somehow you burdened us. And as I said, the problem with that, Your Honor, is it completely blended and destroyed the separateness of these two torts, which is critical. I have 29 seconds, and I'd like to reserve some time, if you permit me, for rebuttal. You can take it. It's up to you. Yes.  Thank you, Judge. May it please the Court. Marcos Jimenez, Kassowitz, Benson, Torres, and Friedman with me. At counsel table is Lee Schachter. He's an assistant general counsel with Verizon Wireless based in Basking Ridge, New Jersey. My response to what I just heard is that Mr. Willenchek was not in favor of the    He was in favor of the remand. He was in favor of the remand. I'm not at the evidentiary hearing that took place over two days during which Judge Campbell heard extensive evidence, not just about Verizon's efforts to protect its customers, but to protect itself. As I understand his argument, he's saying that under 766A, and it's important to understand the differences because I think he mixes the two up. Under the restatement 766, it's required that there be a breach of the contract, and generally it deals with the third party's performance, in this case the customer's performance. Under 766A, which has been recognized in Arizona as valid law, the tortious interference is directed at the plaintiff's performance, Verizon's performance, not the customer's performance, the third party's. Also, importantly, it does not require a breach. And Mr. Willenchek talked a lot about the record. What he's referring to the record is the back and forth between Judge Campbell and myself. That's a colloquy between counsel and the Court. What this Court should focus on, I would respectfully submit, is what the evidence actually was, and that evidence is entitled under the standard of review to this Court's giving it, obviously, giving Judge Campbell full discretion in what he determined as a matter of fact. And what he determined as a matter of fact is that this interference, this improper conduct, in fact burdened Verizon's performance. Verizon received numerous customer complaints, as Judge Seabright pointed out. It received numerous requests for refunds. It received a California regulatory inquiry. All of this required it to expend costs and undergo an undue burden with respect to its performance under its contracts, including having to give early terminations to certain customers. That's in the record. The chief business person for Verizon, Dave Burmester, testified at pages 326 through 330 or so of the transcript, if I have it right, that that's, in fact, what happened, that they received those complaints, refunds, inquiries. So Verizon brought this case to protect. How would you describe the contractual agreement between Verizon and its customers that was burdened by these activities? Sure. Well, there are in the record, in fact, the defendants, the appellants themselves produced these documents. There are complaints from customers who write to Verizon and they say, I want to cancel my contract. I want an early out. Verizon contracts with its customers, and in this particular case, this particular part of the mobile industry, what happens is Verizon allows companies like these appellants to essentially bill for their services, their third parties. And in exchange for that privilege, it has certain rules that are put into place. So when that – this is in the record. When that happens, customers get billed by Verizon for the appellant services, their products, which are called premium text messaging services. They're ringtones, recipes, things like that that customers order. Generally, by going to websites, which in this case are called landing pages that And by going to those websites, they're able to enter a phone number and then receive that product through their mobile handset. The contract between Verizon and its customers is the typical contract between a wireless carrier and its customers is described in those letters and in those complaints, where they essentially receive a mobile handset. They're charged for their airtime. They're charged for any products they order and receive through the handset. And that's the part of the business that we're talking about, the products that they order and receive through a text message. So those contracts were breached. Judge Campbell, I should note, subsequently, after these briefs were completed, just recently on January 30th, in fact, denied their motion to dismiss Verizon's First Amendment complaint. That's in the record below. And went through the whole 766 and 766A analysis. And he found, again, in more detail than in the preliminary injunction order, and we would rely, I would adopt that as my argument here today, that Verizon establishes a tortious interference case not only under 766A, which is the Well, we can't decide the case on what's going on in the district court. I understand. But my point is that below there was, although Judge Campbell did not address this in his preliminary injunction order, there was not only the 766A type of interference where Verizon's performance is made more burdensome, but actually Mr. Burmester testified that customers had actually canceled their contracts. So, therefore, under 766A, there was also a claim. And at this point, we're not talking about damages. We're not talking about anything other than an injunction that the court entered to protect Verizon from their fraudulent activity. Our brief set forth a sophisticated fraud that they undertook to essentially fraudulently gain access to our network so they could deceptively bill customers, causing not just the customers, but Verizon harm. And we have we simply sought injunctive relief, which says to them, nothing more than you can't access the Verizon wireless network. The court was well within its discretion to do that. What were the specific findings by the district court on the causation, the argument being made by appellant here? On the causation was that the defendant's improper conduct, their fraudulent activity, their evading Verizon wireless standards. The ones I talked about earlier. Right. Okay. That those caused customers to call Verizon, complain, request refunds, created a California regulatory inquiry, and it made Verizon's performance under the contract, it directly caused increased expense and increased burden on Verizon and its performance. And to make one final point, there is no requirement in the law that the conduct be directed at one party or the other. The key distinction between 766 and 766A is whose performance is affected. Clearly Verizon's performance was affected. It was caused by their improper action. And we have a claim for that just as we would if we had a claim for a customer who actually breached under 766A. There is a very telling comment in the restatement that was actually cited in this order below by Judge Campbell that was recently issued, which gives an example of a plaintiff who has a contract to keep a highway under repair. And the defendant seeks to interfere with that contract, not by doing anything directly to the plaintiff, but by damaging the highway, thereby making the plaintiff's performance more expensive. That's exactly what happened in this case. Verizon, in effect, is the highway for these charges that are billed to the customers. We have to provide those services. We have to bill for those services and collect money for those services, deal with any complaints that result from those services, deal with any refund request that comes from those services, and deal with any regulatory inquiries that come from those services. And they took care to damage that highway greatly and thereby make Verizon's performance more costly, and therefore the court was well within its right and properly analyzed the law in finding that Verizon had a claim and that injunctive relief was proper. Thank you. I know my time is short, so let me hit the points very quickly, if I may. To get to your question, Judge Seabright, page 10 of the order actually is what you were asking, as opposed to what counsel indicated to you, which was wrong. Verizon, quote, is likely to succeed in showing the defendant's promotion of services to Verizon's customers has resulted in the increased costs, et cetera, refunds, et cetera. That's the whole point. I don't take your point, then. That's what Judge Campbell is saying, that that's the burden on Verizon. Right. But there can't be – that burden is not – how do I explain this? That burden would have to be directed, and he's wrong, at Verizon, not at the third-party customers. The acts have to be directed at Verizon, as you were claiming. The burden – Well, of course the burden is on Verizon. There's no question about that. It's on Verizon. It's the acts. You'll read in the cases, it's the acts, Pettit and other cases. It's the – that whole distinction, the reason for 766A, the whole reason for it, is to distinguish between acts directed at the party who's performing, the plaintiff, versus the third-party. These acts that the court found are all directed at third-parties, the customers, not at Verizon. The only acts directed at Verizon, the ones you indicated earlier, and those don't lead in any way, shape, or form to any conclusion that could possibly have been or was drawn by the court that that could lead to the refunds, et cetera, because it has nothing to do with that. The only thing it does is violation of the MMA guidelines to the customers, the mutual customers. And you can't find that that third-party interference results in a burden under 766 because you need a breach, which they admitted below, contrary to what was just stated, that they didn't have at page 350. That's where the court made this hybrid and said, okay, well, then you can burden the relationship under 766. You can't. You need to follow the elements of 766A, and that is the acts directed at Verizon, which they refuse to read. It's right in the black letter of the restatement, as well as the commentary in cases, all cases that are construed. They haven't cited one case that says that I'm wrong on this. There's two separate torts. They have two separate elements. The court blended them, mistakenly finding a burden is allowable under 766. That's as simple as I can say it. Okay. I think that's all. Does that make sense? Yes. Thank you.  Thank you, judges. Thank you, counsels. We appreciate the arguments.
judges: Seabright, Fisher, Ikuta